IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HYER STANDARDS, LLC,
701 US Highway 45,
Pelican Lake, Wisconsin 54463,

                       Plaintiff,

v.                                                Case No.:

SUPER G CAPITAL, LLC,
1655 North Fort Meyer Drive, #700,
Arlington, Virginia 22209,

MULTIPOINT, INC.,
415 North Sangamon Street,
3rd Floor Front,
Chicago, Illinois 60642,

ASHLEY ISENBERG,
415 North Sangamon Street,
3rd Floor Front,
Chicago, Illinois 60642,

                       Defendants.

## COMPLAINT

NOW COMES plaintiff, Hyer Standards, LLC, by its attorneys, Nash, Spindler, Grimstad & McCracken LLP, and as and for a Complaint hereby allege the following:

### GENERAL ALLEGATIONS

1. Hyer Standards, LLC (hereinafter "Hyer"), is a domestic limited liability company authorized to do business in the State of Wisconsin and, in part, engages in payment processing services, and is located at 701 US Highway 45, Pelican Lake, Wisconsin 54463.

1

2. Defendant, Super G Capital, LLC (hereinafter "Super G"), is a Delaware company that, in part, provides business financing to businesses. Super G's primary place of business is located at 1655 North Fort Meyer Drive #700, Arlington, Virginia 22209. Super G's registered agent for service of process is Darrin Ginsburg, 23 Corporate Plaza #100, Newport Beach, California 92660.

3. Defendant, Multipoint, Inc. (hereinafter "Multipoint") is an Illinois corporation that, in part, provides merchant service needs. Multipoint's primary place of business is located at 415 North Sangamon Street, 3rd Floor Front, Chicago, Illinois 60642. Multipoint's registered agent for service of process is Ashley Isenberg, 415 North Sangamon Street, 3rd Floor Front, Chicago, Illinois 60642.

4. Upon information and belief, Defendant, Ashley Isenberg (hereinafter "Isenberg"), is the Owner, President, and COO of Multipoint, with her current whereabouts unknown. She currently conducts business at 415 North Sangamon Street, 3rd Floor Front, Chicago, Illinois 60642.

5. On or around June 2017, Hyer approached Multipoint and Isenberg as it needed a new credit card processor as its existing processors could not process the credit card chips.

6. Multipoint and Isenberg claimed that it was an ISO processor, but that statement was incorrect as it was not an ISO processor.

7. On July 5, 2017, Hyer and Multipoint entered into a portfolio purchase agreement (hereinafter "Agreement") in which Hyer agreed to sell and Multipoint agreed to purchase the portfolio residual, in part, on the following terms:

a. Multipoint agreed to make installment payments of $110,000.00 in equal installments over 12 months with the first payment due on August 20, 2017;

b. Multipoint agreed to make a final payment of $15,396.98 to Super G by July 20, 2017;

c. Multipoint agreed to reimburse Hyer $10,000.00 for registration fees;

d. Multipoint agreed to hire Hyer's two sales representatives, Duane Vandre and Donald Lewis;

e. Multipoint agreed that Duane Vandre and Donald Lewis would receive 50% of the residuals Multipoint received and for future accounts;

f. Multipoint agreed to pay Hyer 10% of the residuals earned from the portfolio residual and 50% of the residuals earned from future accounts Hyer signs up for payment processing through the purchaser; and

g. Hyer, Duane Vandre, and Donald Lewis agreed to sell payment processing services exclusively for Multipoint as indicated in the contract attached to this Complaint as Exhibit A.

8. Multipoint never paid Hyer as required in the Agreement in January 2018.

9. Unknown to Hyer, prior to Multipoint ever paying Hyer for the accounts, Multipoint used the residual income from Hyer's portfolio to secure a loan with Super G.

10. Once Multipoint secured a loan from Super G, it failed to pay Hyer.

3

11. Despite Hyer's loans with Super G being paid in full, Hyer's residual income was redirected to Super G.

12. Hyer notified Super G that Multipoint had breached its Agreement with Hyer and demanded that Super G redirect the residual income from Hyer's portfolio to it. Super G continued to redirect Hyer's residuals to itself despite Super G knowing that Multipoint had breached its contract with Hyer.

13. Multipoint misrepresented its business in the process of negotiating the Agreement for its own financial gain.

14. Since the Agreement, Multipoint has not been providing Hyer's merchants with the support and assistance they require, Hyer has experienced:

    a. Employee attrition;

    b. Customer attrition; and

    c. Damage to its reputation.

15. As a result of Multipoint and Super G's behavior, Hyer has suffered financially, including defaulting on financial obligations.

16. Jurisdiction is based upon diversity of citizenship to 28 USC § 1332 since the controversy is between citizens of different states and the amount in controversy exceeds $75,000.00.

17. Venue is proper pursuant to 28 USC § 1391(d) as the defendants have significant contacts within this judicial district.

## I. BREACH OF CONTRACT (AGAINST MULTIPOINT ONLY)

18. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

4

Case 1:18-cv-00701-WCG   Filed 05/04/18   Page 4 of 11   Document 1

19. Multipoint breached its contract with Hyer by failing to make payments as required in the Agreement.

20. Hyer has suffered monetary and reasonably foreseeable damages as a result of Multipoint's breach of its contract with Hyer to which Hyer requests judgment against Multipoint for the amounts not paid as well as consequential damages suffered as a result of Multipoint's breach.

## II. WIS. STAT. § 134.01 (AGAINST MULTIPOINT AND SUPER G)

21. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

22. Multipoint and Super G have willfully or maliciously hurt Hyer's reputation and/or business <u>causing Hyer to default on financial obligations</u>.

23. Hyer sustained damages and continues to incur substantial and irreparable damage to its business as a result of defendants' actions.

## III. CIVIL CONSPIRACY (AGAINST MULTIPOINT AND SUPER G)

24. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

25. Defendants conspired together to damage Hyer's reputation and/or business.

26. Hyer sustained damages and continues to incur substantial and irreparable damage to its business as a result of defendants' actions.

## IV. PUNITIVE DAMAGES (AGAINST MULTIPOINT AND SUPER G)

27. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

28. Defendants acted maliciously or in intentional disregard of the rights of plaintiff Hyer as set forth above.

29. As a direct and proximate result of the outrageous conduct of the defendants, Hyer sustained damages and continues to incur substantial and irreparable damage to its business and is entitled to punitive damages.

### V. MISREPRESENTATION (AGAINST MULTIPOINT ONLY)

30. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

31. Multipoint specifically represented to Hyer that it was a financially stable company and that it would make payments to Hyer as required in the Agreement.

32. Multipoint made this representation with the intent to induce Hyer to enter into the Agreement.

33. Hyer is a member of the public meant to be protected by Wis. Stat. § 100.18.

34. Multipoint further withheld material information and facts, which Hyer would need to know and understand before entering into the Agreement.

35. Multipoint's representations and misleading practices were false, deceptive, and misleading.

36. Multipoint's false, deceptive, and misleading practices and representations have caused Hyer to suffer economic loss.

### VI. NEGLIGENT MISREPRESENTATION (AGAINST MULTIPOINT ONLY)

37. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

38. Multipoint specifically represented to Hyer that it was a financially stable company and that it would make payments to Hyer as required in the Agreement.

39. The representations were untrue.

40. Multipoint failed to exercise reasonable care in ascertaining the necessary facts for disclosure.

41. Hyer relied upon the representations to be true and relied on them to its detriment.

42. As a result of Mulitpoint's failure to exercise reasonable care, Hyer has suffered pecuniary damages in an amount to be determined at trial.

## VII. INTENTIONAL MISREPRESENTATION (AGAINST MULTIPOINT ONLY)

43. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

44. Multipoint specifically represented to Hyer that it was a financially stable company and that it would make payments to Hyer as required in the Agreement while knowing it was not a financially stable company and would not make payments as required in the Agreement.

45. The representations were untrue.

46. The untrue representations were knowingly made by Multipoint without caring whether the representations were true or false.

47. Multipoint made the representations with the intent to deceive and induce Hyer to enter into the Agreement at a price and on terms favorable to Multipoint, and to the detriment of Hyer, resulting in pecuniary damages in an amount to be determined at trial.

7

48. Hyer believed the representations made by Multipoint to be true and relied upon the representations.

## VIII. STRICT LIABILITY MISREPRESENTATION (AGAINST MULTIPOINT ONLY)

49. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

50. Multipoint made representations of facts as set forth above.

51. The representations were untrue.

52. Multipoint made the representations as facts based upon its own personal knowledge, or in circumstances in which it necessarily ought to have known the truth or untruth of the statements.

53. Multipoint had an economic interest in the Agreement, and stood to make a financial gain if Hyer entered into the transaction.

54. Hyer believed the representations made by Multipoint as described above to be true and relied upon the representations.

## XI. RESCISSION OF CONTRACT (AGAINST MULTIPOINT ONLY)

55. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

56. Multipoint breached its contract with Hyer.

57. As a result of Multipoint's breach, Hyer is entitled to rescission of the Agreement.

## X. CIVIL THEFT (AGAINST SUPER G ONLY)

58. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

59. Despite Hyer's loans with Super G being paid in full, Hyer's residual income was redirected to Super G.

60. Super G intentionally retained possession of Hyer's residual income despite Hyer's repeated requests with the intention to permanently deprive Hyer of its residual income.

61. Hyer's residual income should not have been redirected to Super G.

62. As a result of Super G's conduct, Hyer has suffered damages in an amount to be determined at trial.

### XI.　FRAUD (AGAINST MULTIPOINT AND SUPER G)

63. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

64. Multipoint specifically represented to Hyer that it was a financially stable company and that it would make payments to Hyer as required in the Agreement.

65. This representation was untrue as Multipoint used Hyer's portfolio to ensure payment with Super G and did not make payments as required in the Agreement.

66. Multipoint knew the representations were incorrect and that it would not be able to make the required payments in the Agreement, but did not properly notify Hyer.

67. Multipoint made this representation to induce Hyer to its detriment as Hyer entered into an Agreement with Multipoint expecting the company was financially stable and that it would make the required payments in the Agreement.

68. Hyer notified Super G that Multipoint had breached its Agreement with Hyer and demanded that Super G redirect the residual income from Hyer's portfolio to it. Super

G continued to redirect Hyer's residuals to itself despite Super G knowing that Multipoint had breached its contract with Hyer.

69. Hyer believed Multipoint's representations and relied on the representations.

70. As a result of Multipoint and Super G's conduct, Hyer has suffered damages in an amount to be determined at trial.

### XII. PIERCING THE CORPORATE VEIL (AGAINST ISENBERG ONLY)

71. Hyer realleges and incorporates herein by reference the allegations in the foregoing paragraphs, as if fully stated herein.

72. Upon information and belief, Isenberg controlled the policies and business practices of Multipoint in these dealings with Hyer, such that Multipoint had no separate existence or mind of its own.

73. Such control asserted by Isenberg was used by her to commit a violation of statutory duties or other legal duties in contradiction of Hyer's legal rights as previously stated in this Complaint.

74. The aforesaid control and breach caused injury and damage to Hyer and allows Hyer to pierce the corporate veil and assert claims directly against Isenberg.

### PRAYER FOR RELIEF

WHEREFORE, Hyer demands a trial by jury and judgment against the defendants as follows:

1. For damages to compensate Hyer for the actual loss it has suffered arising out of the above-referenced facts;

2. For the litigation and investigation costs, including attorney's fees, incurred to prosecute this claim;

3. Compensatory damages over and above any special damages;

4. Punitive damages in an amount to be determined by the jury;

5. For twice compensatory damages and attorney's fees pursuant to Wis. Stat. § 100.18; and

6. Any other relief the Court may deem just and proper.

**A TRIAL BY JURY IS HEREBY DEMANDED**

Dated this 3rd day of May, 2018.

NASH, SPINDLER, GRIMSTAD & McCRACKEN, LLP

*s/ Ryan R. Graff*

By: _____
Ryan R. Graff
State Bar No. 1051307
Sean A. Bukowski
State Bar No. 1096228
Attorneys for plaintiff Hyer Standards, LLC
Nash, Spindler, Grimstad & McCracken, LLP
1425 Memorial Drive
Manitowoc, WI 54220
Telephone: (920) 684-3321
Facsimile: (920) 684-0544
rgraff@nashlaw.com
sbukowski@nashlaw.com